IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FONDA FELLOW BISHOP, )
 )
 Plaintiff, )
 )
v. ) CIVIL ACTION NO. 00-JEO-3023-S
 )
OFFICER MARSHALL GULLEY, )
 )
 Defendant. )

**MEMORANDUM OPINION**

This matter is before the court for a decision on the merits following a non-jury trial on September 30, 2002. After consideration of the testimony and arguments of the parties, the court finds that judgment is due to be entered in favor of the defendant.

**I. PROCEDURAL BACKGROUND**

Plaintiff Fonda Fellow Bishop (hereinafter "Bishop" or "the plaintiff") is an inmate in the Alabama penal system. He filed the present complaint pursuant to 42 U.S.C. § 1983. The amended complaint alleges that he has been deprived of rights, privileges, or immunities afforded him under the Constitution or laws of the United States of America and names Officer Marshall Gulley (hereinafter "Gulley" or "the defendant"), the Birmingham Police Department, and the City of Birmingham as defendants. Specifically, Bishop alleges that Gulley violated his rights when, after his arrest, Gulley went to his vehicle, broke the window, searched the car, and abandoned it at the scene. As compensation for the alleged constitutional violations, plaintiff

seeks unspecified damages.[1] (Doc. 7 at 3-4).[2]

On June 29, 2001, the undersigned magistrate judge entered a report and recommendation finding that the claims against the City of Birmingham and the Birmingham Police Department were due to be dismissed. The court further recommended that the plaintiff's claims challenging his confinement and for the loss of property were similarly due to be dismissed. (Doc. 8). There were no objections to the report and recommendation. United States District Court Judge Sharon L. Blackburn, entered an order dismissing all of the plaintiff's claims except the Fourth Amendment claim that Gulley conducted an illegal search of the plaintiff's vehicle. (Doc. 9).

The court entered an Order for Special Report directing that copies of the complaint in this action be forwarded to the named defendant (Gulley) and requesting he file a special report addressing the factual allegations of the remaining claim in the plaintiff's complaint. (Doc. 11). The defendant filed a special report, which the court considered as a motion for summary judgment. (Doc. 13 & 14). The plaintiff filed a response to the defendant's motion for summary judgment. (Doc. 20). The undersigned recommended that the motion for summary judgment be denied. (Doc. 21). Judge Blackburn adopted the report and recommendation and denied the motion. (Doc. 22). She referred the matter to the undersigned for further proceedings. (*Id.*).

The parties consented to the jurisdiction of the undersigned to try this matter.[3] (Doc.

---

[1] The plaintiff initially sought a hearing, a "class action" and counsel. A non-jury trial was granted the plaintiff, this matter does not involve conduct subject to class certification under FEDERAL RULE OF CIVIL PROCEDURE 23. Counsel was not appointed because the claim is straight-forward and the plaintiff demonstrated an ability to advance his claim effectively.

[2] References to "Doc. ___" are to the document numbers assigned the various pleadings by the Clerk of the Court.

[3] *See* 28 U.S.C. § 636(c)(1).

40). The case was tried on September 30, 2002.

## II. THE EVIDENCE

The evidence presented divergent views of what occurred at the time of the plaintiff's arrest. Accordingly, a review of the relevant testimony is appropriate.

### A. Mr. Bishop's Testimony

The plaintiff testified that he entered the Food World store on Parkway East in Birmingham. He talked with a clerk about oil or baby food. As he walked away, he saw the store manager talking with Gulley who was working at the store as an off-duty police officer with the City of Birmingham. He was in uniform and was working as a security guard. Gulley approached Bishop and asked to speak with him. The plaintiff responded, "No problem." Gulley inquired about an allegation that he (Bishop) had just presented a forged check to the clerk. Bishop consented to being searched. Bishop was then searched by the officer and taken to an office in the back of the store. Bishop did not tell Gulley his name. The plaintiff did not have any identification on his person.

Gulley asked another store security person to sit with Bishop. Gulley was gone 10-15 minutes. He returned with the plaintiff's driver's license. A short time later, the victims, whose checks were taken, arrived at the store. They questioned how Bishop could be the one that had cashed one of their checks earlier because, according to them, the driver's license number on the back of the check did not match the plaintiff's license number. A police sergeant arrived at some unspecified time and Bishop was ultimately transported to the City Jail. As he was leaving, he noticed broken glass around his car.

According to Bishop, Gulley did not ask for his permission to search his car and he

3

(Bishop) did not provide Gulley with the car keys. The plaintiff lost a gold nugget ring, a quartz watch, a cluster ring, a gold rope chain and an Alpine Car Stereo, all of which had a value in excess of $1,000.00. (Doc. 26 at 3).

On the advice of counsel, Bishop pled guilty to a possession of a forged instrument charge and his parole on another offense was revoked. He asserts that he pled guilty to a possession of a forged instrument offense that was related to conduct that occurred a couple of weeks earlier at the same store.[4]

### B. Officer Gulley's Testimony

After being advised by a store clerk that the plaintiff was attempting to pay for merchandise with a forged stolen check, the defendant detained Bishop. As Gulley located the plaintiff in the store, he noticed that he placed something on the counter of one of the food aisles. Bishop was handcuffed and taken to the back office. Bishop initially was not cooperative because he would not provide the necessary background information to Gulley to make the arrest complete. Gulley asked Bishop for permission to search his car. The plaintiff gave him the keys and said he could search. Gulley went outside and saw two individuals in the car. Gulley asked them to get out of the car, which they did. He looked in the glove box and recovered a pay stub from Bishop's employer, the City of Birmingham, Department of Streets and Sanitation.

After a Birmingham Police Sergeant arrived and talked with Bishop, he was more cooperative. According to Gulley, Bishop "came straight." At some point, before Gulley went home sometime between 12:30 a.m. and 1:00 a.m., Gulley returned to the food aisle where he arrested Bishop and recovered a book of blank checks that belonged to the victims. Bishop was

---

[4] The dispute over which offense the plaintiff pled guilty to is not significant enough to alter the result in this matter.

taken to the city jail. Gulley did not seize Bishop's vehicle, but left it at the scene so that one of Bishop's family members could retrieve it for him. At the time Gulley saw Bishop's car, he was not aware of any damage to it or that any property was missing.

### C. Roslyn Barlow's Testimony

The plaintiff's sister, Roslyn Barlow, testified that she retrieved the plaintiff's vehicle from the Food World parking lot after he was arrested. When she saw it, she initially thought the window was broken. However, she determined that the window was not broken. It was simply rolled down. She noted that the glove box was opened and Bishop's work clothes were on the floor. After recovering the car, it was taken to Bishop's residence where it remained for a while.

### D. Delphia Graham's Testimony

The plaintiff's mother, Delphia Graham, testified that he called her about getting his car from the parking lot a day or two after he was arrested. She got the keys from Bishop at the jail. When she saw the car, it was in disarray and the window was down. She did not recall whether the window was broken.

## III. DISCUSSION

The Fourth Amendment to the United States Constitution prohibits unreasonable search and seizure by those asserting the police power of the state. Section 1983 of Title 42 of the United States Code provides for a civil remedy when one acting under color of state law breaches that prohibition. 42 U.S.C. § 1983. A warrant-less search of private property by a police officer is presumptively unreasonable, unless the search falls into one of the narrowly defined exceptions recognized in the law. *United States v. Campbell*, 920 F.2d 723 (11th Cir. 1991). An exception to the Fourth Amendment's requirement of both a warrant and probable cause is a search that is

conducted pursuant to knowing and voluntary consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *Bumper v. North Carolina*, 391 U.S. 543, 548-50, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968).

The defendant does not dispute that he conducted a search of the plaintiff's vehicle on the night in question. He does contend, however, that the car was searched with the plaintiff's permission in order to obtain identification documents. Gulley denies having done any damage to the vehicle. The focal question is whether Gulley had Bishop's consent to search the car. If he did, there is no constitutional violation. If he did not, he was not authorized to search.[5] The plaintiff does not allege that his consent was obtained through threats or coercion; instead, he asserts that there never was any consent.

After consideration of all the evidence, the court finds that the plaintiff has not satisfied his burden of proving his claim by a preponderance of the evidence for various reasons. Because of the significance of each reason, they will be addressed individually.

First, the plaintiff's testimony, particularly his demeanor, demonstrates that he was prone to exaggeration and distortion. By way of example, in his amended complaint, Bishop states that the officer made entry to his car by "knocking" out the window. (Doc. 7, p. 4). The evidence presented by the plaintiff showed, however, that the window was not broken. The plaintiff seeks to explain this discrepancy by stating that he saw glass by the car as he was being taken to the jail. That may be the basis of his conclusion, but it does not change the fact that he exaggerated what he saw. In this case, the court finds such discrepancies, along with the plaintiff's accusatory

---

[5] Gulley does not assert that he had probable cause to search or that the search was part of an inventory procedure.

6

and agitated demeanor in the courtroom, significant.[6] They detracted from this court's ability to believe his testimony. Second, although the court was not particularly impressed with the testimony of Officer Gulley, it did not appear to be contrived or questionable. Third, Gulley could have examined the vehicle without the plaintiff's consent after Bishop was arrested because he testified that it was the standard policy of the Birmingham Police Department to inventory impounded vehicles. *See South Dakota v. Opperman*, 428 U.S. 364, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976).

Weighing the evidence as this court must do in an instance like the present one, the court finds that the plaintiff has not met the burden of proof necessary for relief. The court finds that Gulley's testimony that he acted upon Bishop's consent was credible. Bishop's claim is due to be denied on the merits.[7]

## IV. CONCLUSION

The court is convinced that the defendant acted properly under the circumstances. Judgment is therefore due to be entered in favor of the defendant. An order consistent with this court's findings will be entered.

The Clerk of the Court will be directed to serve a copy of this opinion and the accompanying order upon the plaintiff at Kilby Correctional Facility, the Bullock Correctional Facility, and at the Elmore Correctional Facility, Alabama.

---

[6] The court also notes that in the "affidavit" that the plaintiff signed and submitted on behalf of his sister, Barlow, he states that she was "surprised to see the window broken. . . ." (Doc. 32, Barlow Affidavit). He also asserts that the window was broken in his "Opposition to Defendant's Motion for Summary Judgment." (See Doc. 20 at ¶ 9).

[7] To the extent that the plaintiff's amended complaint and pleadings could be read to advance state law claims, they are due to be denied for the reasons stated herein.

**DONE**, this 30th day of September, 2002.

_____
**JOHN E. OTT**
United States Magistrate Judge